UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 09-CR-874 (JFB)
———————————

UNITED STATES OF AMERICA,

versus

KWAME RICHARDSON,

Defendant.

———————————

MEMORANDUM AND ORDER
December 23, 2010

———————————

JOSEPH F. BIANCO, District Judge:

Defendant Kwame Richardson ("defendant" or "Richardson") was indicted on December 30, 2009 in four counts, all relating to the events of December 3 and 4, 2009. Specifically, the indictment charges Richardson with: (1) conspiracy to import cocaine, in violation of Title 21, United States Code, Sections 963, 960(a)(1), and 960(b)(2)(B)(ii); (2) importation of cocaine, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(2)(B)(ii); (3) conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B)(ii)(II); and (4) attempted possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Sections 841(b)(1)(B)(ii)(II) and 846.

Richardson has moved to suppress statements he made to law enforcement officers after his arrest on December 4, 2009, arguing that his waiver of his *Miranda* rights was not knowing and voluntary because he is not an English speaker and, as such, did not understand the *Miranda* warnings as they were administered to him in English. On November 5, 2010, the Court conducted an evidentiary hearing regarding Richardson's motion, and, on December 16, 2010, the Court heard arguments on the motion. For the reasons that follow, the motion is denied.

I. FACTS

The law enforcement officer who detained Richardson on the day of his arrest testified at the hearing, as did the pretrial services officer who supervised Richardson from December 2009 to August 2010 in connection with this case. Richardson called no witnesses.[1] After evaluating the

---

[1] However, Richardson did submit an affidavit in which he stated, *inter alia*, "[b]ecause this interrogation was conducted without the assistance of a Guyanese-Creole interpreter, I did not understand that I had the right to the

credibility of the witnesses, and the other evidence offered at the hearing, as well as the defendant's affidavit and other submissions, the Court makes the following findings of fact.

On December 3, 2009, Immigration and Customs Enforcement ("ICE") Special Agent John Lee, then assigned to the JFK Airport Narcotics Smuggling Unit, responded to a call from a Customs and Border Protection officer regarding a narcotics cocaine seizure coming in from Guyana. After speaking with the subject of that seizure, Amy Leitch ("Leitch"), Special Agent Lee and his team arranged to do a controlled delivery of the cocaine at a hotel in Jamaica, Queens. Through audio and video surveillance equipment set up in Leitch's hotel room, Special Agent Lee and other agents were able to monitor and observe the controlled delivery. At some point during the surveillance, the agents saw Richardson enter Leitch's hotel room, count a stack of U.S. currency, hand the money to Leitch, and then grab the suitcase that was sitting on top of the bed and contained the cocaine. At that point, Special Agent Lee, along with five or six other agents, entered the hotel room and placed Richardson under arrest. (Tr. at 8-11.)[2]

---

assistance of an attorney prior and during this interrogation and I did not knowingly or voluntarily waive any of my Fifth Amenedment [sic] rights, including the right to the assistance of counsel during post arrest questioning." (Def.'s Mem. of Law Ex. A at ¶ 10.) Moreover, although the defendant initially indicated that he would call a language expert at the hearing, he subsequently decided not to do so. (*See* ECF Docket Entry 53.)

[2] "Tr." refers to citations to the transcript of the November 5, 2010 suppression hearing and "Ex." refers to exhibits admitted during that hearing.

Special Agent Lee then read Richardson his *Miranda* rights from a card with the warnings printed on it. (*See* Gov't Ex. 1.) These rights were administered in English. It appeared to Special Agent Lee that Richardson understood the warnings as they were being read to him, and at no point did Richardson request an interpreter or otherwise say or do anything to indicate that he did not understand. After the defendant waived his *Miranda* rights, Special Agent Lee proceeded to interview Richardson for approximately twenty minutes. During the course of this interview, Special Agent Lee asked Richardson a variety of questions, including initial questions regarding officer safety and securing the scene, such as whether Richardson came by himself or whether there was anyone else with him, and then detailed questions regarding the drugs, such as whether Richardson knew the type of drugs in the suitcase, whether he knew who the people were who sent him to pick up the suitcase, whether there were other people involved, and whether Richardson knew the source of the cocaine supply in Guyana. Richardson answered each of these questions in a responsive and relevant manner, and he was able to provide detailed information regarding the offense, including that he was sent by an individual named "Bonny" to pick up the suitcase and that Bonny gave him $5,700, a portion of which was to pay off Leitch for her traveling fee and the remainder of which was for Richardson. Each of these questions were asked in English, and at no point did Richardson say or do anything to indicate that he wanted an interpreter or that he did not understand the questions. (Tr. at 12-17.)

Subsequently, the agents took Richardson back to the ICE office for processing. Once back at the office, Special Agent Lee reiterated Richardson's *Miranda* rights, which Richardson again waived.

Accordingly, Special Agent Lee resumed his interview of Richardson, asking detailed questions regarding the offense. Specifically, Special Agent Lee asked for more detailed information about "Bonny" and repeated a number of the questions he asked Richardson at the hotel in an attempt to find inconsistencies in Richardson's account. These questions included where Richardson was supposed to deliver the drugs, how much he expected to be paid by Bonny, and whether he knew the source of the supply in Guyana. Richardson explained that he met Bonny approximately three years prior to the offense when he was playing dominoes in a basement in Brighton Beach. At some point in 2004, Bonny introduced Richardson to a police lieutenant in Guyana who was the head of a drug smuggling organization in Guyana. Richardson also provided a physical description of Bonny, namely, that Bonny was of Guyanese descent and was in his fifties, bald, and about 5'5'' in height, and that he lived in Brooklyn at the intersection of Ocean and Dudley Road. Finally, Richardson added that an individual named Tony called Bonny and provided instructions for picking up the suitcase containing the drugs. This interview lasted approximately twenty minutes. Although Richardson spoke with a thick Guyanese accent, throughout the course of the two interviews he spoke in English and Special Agent Lee was able to understand him. (Tr. at 17-20.)

As a result of his arrest and release on bail in this case, Richardson was placed under the supervision of Pretrial Services Officer Travis Smith. Although Officer Smith did not do the initial intake interview of Richardson, Officer Smith supervised Richardson from December 2009 to August 2010. As part of the supervision process, Officer Smith reviewed the bail report that had been prepared regarding Richardson. The report indicates that Richardson's primary language is Creole/English[3] and that an interpreter was required. (*See* Gov't Ex. 7.) However, Officer Smith never used an interpreter to communicate with Richardson. In addition, Officer Smith reviewed Pretrial Services' interview sheet for Richardson, which indicates that Richardson is fluent in English as a secondary language. (*See* Gov't Ex. 4 at 3.) Generally, this box would be marked based upon statements made by a defendant regarding his or her language skills. During Officer Smith's post-release interview with Richardson, Officer Smith reviewed the terms of Richardson's bond conditions, how frequently Richardson had to report to Pretrial Services, and general instructions of what is expected of a defendant while the defendant is under supervision. These instructions, which Richardson appeared to understand, were all provided in English, and at no point did Richardson request an interpreter or indicate that he did not speak English. (Tr. at 46-53, 57.)

While under supervision, Richardson was required to report to Pretrial Services for visits with Officer Smith. Upon arriving at the Pretrial Services office for these visits, Richardson had to answer a series of questions at an automated reporting kiosk. These questions included: have there been any changes since your last report; has there been a change of employment or address; has there been any contact with law enforcement; have you used any illegal drugs since your last visit; and are there any other issues that you need to discuss with the Pretrial Services officer during your visit. Officer Smith explained to Richardson, in English, how to operate the kiosk, and

---

[3] During the hearing, Richardson's native language was referred to alternatively as Creole, Guyanese, and Guyanese Creole.

3

Richardson appeared to understand. Indeed, Richardson successfully used the kiosk at his visits and presumably did so in English.[4] After checking in at the kiosk, Richardson would meet with Officer Smith to discuss the status of his case and any upcoming court dates and to review any documents provided by Richardson, such as documents regarding address, employment, or income verification. Officer Smith discussed these matters with Richardson in English without the assistance of an interpreter. Notably, Richardson did not have any trouble complying with the pretrial release and reporting instructions that were explained to him by Officer Smith in English. (Tr. at 53-58.)

## II. DISCUSSION

Richardson has moved to suppress his post-arrest statements on the grounds that he is not an English speaker and, accordingly, could not have voluntarily and knowingly waived his *Miranda* rights. As set forth below, the Court finds that the government has met its burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

### A. Applicable Law

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court determined that "in order to combat [the pressures surrounding in-custody interrogations] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Id.* at 467. Accordingly, "prior to the initiation of questioning," the government must inform a suspect of "the [government's] intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda*, 384 U.S. at 468-70). Once an accused is apprised of these rights, he may waive them "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *Moran*, 475 U.S. at 421 (quoting *Miranda*).

When a defendant moves to suppress a statement that he claims was obtained in violation of *Miranda*, the government has the burden of proving by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver the defendant's *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). For a waiver to be voluntary, the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. In addition, for a defendant to make a knowing and intelligent waiver, he must have "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* However, the accused need not "know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). Instead, the accused need only be aware that "he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.*

"Whether a waiver is 'knowing and voluntary' is a question directed to a

---

[4] The kiosk only offers options for English or Spanish speakers, and there is no indication that Richardson would have chosen the Spanish language option. (Tr. at 55-56.)

defendant's state of mind, which can be inferred from his actions and statements." *United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1993). Further, as the Supreme Court has stated, "the question of waiver must be determined on 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It is well-settled that the existence of limitations on language skills does not necessarily bar a finding of a knowing and voluntary waiver. *See United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (defendant was able to give a knowing and voluntary waiver where he had "a reasonably good command of the English language"); *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir.1989) ("Even though [defendant's] proficiency in the English language may have been limited, it did not prevent him from making a knowing and intelligent waiver of his constitutional rights. [Defendant's] native tongue is Spanish. Nonetheless, the record, and in particular the transcript of the recorded interview, reveals that, although he spoke in broken English with an accent and occasionally lapsed into Spanish, his command of English was sufficient for him to have understood the *Miranda* warnings given to him. According to his medical records, he was alert and observant during the times that the warnings were given. On each occasion that he was advised of his rights, he indicated that he understood those rights."); *United States v. Ghafoor*, No. 95 Cr. 258, 1995 WL 434326, at *1 (S.D.N.Y. July 21, 1995) (waiver was valid where, *inter alia*, defendant indicated he spoke English, claimed to understand his *Miranda* rights, responded to requests for pedigree information, made a specific statement regarding the offense, and never asking the law enforcement officer to repeat questions); *United States v. Yian*, No. 94 Cr. 719, 1995 WL 422019, at *2 (S.D.N.Y. July 18, 1995) (defendant's English was sufficient to make a knowing waiver where did not indicate a lack of understanding and was able to converse with English-only speakers); *United States v. Li*, No. 95-cr-0226 (DLC), 1995 WL 390094, at *4 (S.D.N.Y. July 3, 1995) (finding that defendant's English skills were sufficient where defendant did not indicate that he did not understand the warnings, exhibited no difficulty in understanding what officers speaking only English were saying, and was able to discuss various scenarios under which a visit to the defendant's home would proceed); *accord United States v. Jean*, 285 F. App'x 651, 652-53 (11th Cir. 2008) (defendant who was fluent in Creole and could not read English nonetheless was able to give knowing and voluntary *Miranda* waiver where he could understand spoken English, showed no difficulty understanding and speaking English, and was able to provide detailed information about his involvement in the offense). Instead, it is a case-specific determination, and the Court must determine based on all of the facts presented whether, notwithstanding any limitations on the defendant's language skills, the defendant was aware that statements he made could be used against him, knew of his right to remain silent, and knew of his right to obtain the assistance of counsel.

B. Analysis

As an initial matter, the defendant does not dispute that he was read *Miranda* warnings or that he speaks some English. Instead, the defendant argues that his English skills are not strong enough for him to have knowingly and voluntarily waived his *Miranda* rights. For the reasons that follow, the Court disagrees and finds that the

5

government has met its burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

First, the Court finds that Special Agent Lee's description of his administration of the *Miranda* warnings and of Richardson's subsequent waiver was entirely credible. At no time did Richardson indicate that he did not understand the warnings or ask that the warnings be repeated, in English or otherwise. Moreover, Special Agent Lee's description of his interview of the defendant also demonstrates, by a preponderance of the evidence, that Richardson has substantial English language skills that would certainly be strong enough to enable him to understand, and then knowingly and voluntarily waive, his *Miranda* rights. As outlined *supra*, Special Agent Lee asked Richardson a number of questions, all in English, and Richardson not only was able to respond in a relevant and responsive fashion, but also was able to provide detailed answers about the offense, including the name and physical description of the individual who sent him to pick up the suitcase, the amount of money that individual gave him for the pick-up, and information about the drug operation in Guyana, such as the involvement of a police lieutenant. Richardson never indicated that he did not understand the questions, and it is abundantly clear from the defendant's responses that he understood what was being said by the Special Agent throughout the interviews and certainly had sufficient English skills to make a voluntary and knowing waiver of his *Miranda* rights. In short, the Court finds Special Agent Lee's testimony entirely credible and, given the totality of the circumstances (including the forty minutes of interviewing), the defendant had sufficient English skills to voluntarily, knowingly, and intelligently waive *Miranda*, and did so in this case.

The credible testimony of Officer Smith corroborates that of Special Agent Lee and provides further support for the conclusion that the Government has met its burden in proving that the defendant has sufficient English language skills to make a knowing and voluntary *Miranda* waiver. Specifically, Richardson fully complied with the detailed instructions Officer Smith gave him regarding the terms of his release and supervision, all of which were described in English. He was also able to provide relevant answers, in English, during Officer Smith's in-person visits with Richardson. Moreover, Richardson was able to operate and provide responsive answers to questions at the automated kiosk, which Richardson operated in English. Officer Smith also credibly testified that Richardson appeared to understand all of their conversations and the instructions Officer Smith provided.[5]

---

[5] It is well-settled that "a defendant's statements to pretrial services are admissible against the defendant when used to impeach the defendant's credibility." *United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004); *see also United States v. Ramos*, 264 F. App'x 57, 59-60 (2d Cir. 2008) (holding that district court did not err in admitting statements defendant made for a pretrial services report where statements were admitted to impeach the defendant's contradictory affidavit). Here, the government properly introduced the Pretrial Services evidence to impeach the defendant's affidavit, in which the defendant claimed substantial limitations on his English skills (*see* Def.'s Mem. of Law Ex. A), and no objection was made to such evidence. In any event, even without the Pretrial Services evidence, the Court finds the defendant's affidavit not to be credible in light of the credible testimony of Special Agent Lee and the totality of the circumstances surrounding the interviews.

6

In sum, the government has proved by a preponderance of the evidence that the defendant has sufficiently strong English skills to enable him to have voluntarily, knowingly, and intelligently waive his *Miranda* rights, and that the defendant made such a waiver in this case.

### III. CONCLUSION

For the foregoing reasons, the defendant's motion to suppress is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 23, 2010
      Brooklyn, New York

\* \* \*

The United States is represented by Loretta E. Lynch, U.S. Attorney, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201 by Allon Lifshitz, William David Sarratt, and David Bitkower, Assistant U.S. Attorneys. Defendant Kwame Richardson is represented by Len H. Kamdang, Federal Defenders of New York, Inc., One Pierrepont Plaza, Brooklyn, New York 11201.